[Cite as *Fowerbaugh v. Sliman*, 2022-Ohio-1314.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| PAUL T. FOWERBAUGH, ET AL., | : | |
| | | No. 110657 |
| Plaintiffs-Appellees, | : | |
| v. | : | |
| DAVID A. SLIMAN, JR., ET AL., | : | |
| Defendants-Appellants. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 21, 2022

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-18-908090

*Appearances:*

Jerome, Grauer and Associates, Ltd., and John D. Grauer,
*for appellees*.

John D. Toth, *for appellant* David A. Sliman, Jr.

EILEEN A. GALLAGHER, P.J.:

{¶ 1} This case involves a dispute arising out of a residential real estate transaction between plaintiffs-appellees Paul and Margaret Fowerbaugh (collectively, the "buyers") and defendant-appellant David A. Sliman, Jr. and defendant Marin Fowler (collectively, the "sellers"). Sliman contends that (1) the

trial court erred by granting the buyers' motion for summary judgment as to liability on their claim for fraudulent concealment and misrepresentation ("fraud claim") and (2) the trial court abused its discretion by awarding the buyers $82,985.62 in attorney fees on their fraud claim.

{¶ 2} For the reasons that follow, we affirm the trial court's judgment.

**Procedural and Factual Background**

{¶ 3} In January 2017, Sliman purchased a single-family residence located on Wooster Road in Rocky River, Ohio (the "residence" or the "home") for $225,000. Shortly thereafter, Sliman began renovating the home. Fowler is Sliman's wife.

{¶ 4} Sliman worked in the construction industry as "project manager" or "assistant project manager/superintendent" for WXZ Residential/Development, a real estate development company. Sliman's role at WXZ Residential/Development involved reviewing blueprints, budgeting for framing expenses, gathering quotes for commercial construction projects and "hands-on" carpentry and tile work. Sliman also did construction work through a company he owned and operated, Ridge Design, LLC.

{¶ 5} Sliman had a set of "drawing renderings" prepared for his renovation project (the "drawings"). The drawings stated that all electrical work, plumbing work and HVAC work was to be "in strict conformance" with local, state and national codes. Sliman claimed that he "didn't pay much attention to any of that because

* * * the estimating was too much in order to do [that] specific rendering" and it was "not a permitted plan," but rather, was "just * * * conceptual."

{¶ 6} Over the next several months, Sliman (and other tradespeople at his direction) performed renovations that involved substantial alterations to the residence. The renovations included framing and structural support changes, alterations to the HVAC system and plumbing and electrical work. The plumbing and electrical work were not performed by licensed plumbers or electricians.

{¶ 7} Dennis Austin, one of the tradespeople Sliman had hired to assist in renovating the residence, testified that Sliman told him "we did not need to pull any permits as trades" because Sliman, as the homeowner, was "pulling the permits." Sliman obtained only one permit for the renovations — a permit for exterior windows. During his deposition, Sliman testified that he "was completely unaware of the other [permits] that may or may not have been needed to be pulled." However, in June 2017, an inspector (the "building inspector") for the Rocky River Building and Housing Department (the "building department") contacted Sliman regarding the renovation work he was doing on the residence. The building inspector indicated that, based on a drive-by inspection and what he had observed through the home's windows, it appeared that additional work was being done that required permitting. The building inspector requested that Sliman obtain the necessary permits or arrange a time when the inspector could conduct an interior inspection of the residence. Sliman met with the building inspector at the building department. Sliman testified that he could not recall "the full conversation" or what

specifically he said during his meeting with the building inspector other than that he "basically" told the building inspector that the project involved "slight alterations" and "replacing bad components in the house." The building inspector testified that he explained the type of work that required permits to Sliman and that Sliman told him he was not doing any work that required permitting, i.e., that he was not performing any electrical or plumbing work, making any changes to framing or installing a new HVAC system. Based on Sliman's representation that the project involved "just dry wall and cabinets," the building inspector did not seek to compel an interior inspection of the residence.

{¶ 8} On October 20, 2017, after the renovations were substantially completed, the sellers listed the residence for sale for $499,000. The buyers visited the home twice while it was on the market. The sellers' real estate agent informed the buyers that Sliman was "a finish carpenter by trade" and had made the recent renovations to the home for his family. A "Home Updates" form, which was provided to the buyers by Sliman's real estate agent, described the electrical panel as having been "updated" in 2017, the garage as having "new electrical 2017" and the windows, bathroom, shower or tub, kitchen, flooring, cabinets, fixtures, furnace, air conditioner and outlets as "[b]rand new 2017."

{¶ 9} On October 22, 2017, the sellers signed and delivered a residential property disclosure form to the buyers (the "residential property disclosure form"). In the residential property disclosure form, the sellers represented that they knew of no "violations of building or housing codes * * * affecting the property," no

"problems or defects" affecting the residence's mechanical systems (including the electrical and plumbing systems), no material problems affecting any structural components and no other known material defects affecting the property. The form did not contain the disclosures provided to Sliman when he purchased the home. When Sliman acquired the property, the residential property disclosure form he received from the sellers stated "floor drain in basement snaked and repaired broken pipe in basement and front yard (2016). Repaired leak in first floor bathroom near slider and patched ceilings. No issues since."

{¶ 10} After receiving the residential property disclosure form, the buyers' real estate agent inquired whether Sliman had pulled permits for the renovation work he had performed. She was told by Sliman (or by his real estate agent relaying Sliman's response) that permits "weren't needed." The buyers also inquired (through their real estate agent) whether a certificate of occupancy was needed — which would have required an inspection by the building department — in light of the substantial renovations that had been made to the home. Sliman responded that because he did the renovation work himself as the homeowner, none was needed.

{¶ 11} The buyers agreed to purchase the property for $460,000, subject to a home inspection. The buyers' home inspection identified various potential issues with the property.[1]

---

[1] The issues identified in the home inspection report included: settling cracks in the driveway; a trip hazard on the sidewalk; an uneven rise at the front steps; an open junction box on the front porch; some gaps in brick and windows requiring sealing; the lack of GCFI protection on certain electrical outlets; overhanging tree branches; a dead tree; missing handrailings; a disconnected ground wire; minor paint flaking in certain

{¶ 12} Following their home inspection, the buyers waived all contingencies with the exception of a few "punch list" items that had been added as an addendum to the sales agreement. These items included: installation of a kitchen and basement handrailing, a tile backsplash in kitchen, a range hood and appliances supplied by the buyers, vent covers, a bathroom cabinet door and rods in the bedroom closets; the caulking of counters throughout the home and the repair of a leak in the ceiling above the door in the family room.

{¶ 13} The sale of the residence to the buyers closed on December 5, 2017. The buyers moved into the residence on December 30, 2017.

{¶ 14} At time of the closing, the home's plumbing, heating and electrical systems were functioning as expected. Several weeks after the buyers purchased the home, but before they moved in, the buyers detected an odor of sewer gas coming from the basement and discovered a potential sewer backup. The buyers hired plumbers to investigate the residence's plumbing and drain system. The plumbers discovered that no traps were installed in multiple drains and that there was a lack of venting in one shower.

---

areas; the placement of overhead electrical wires near a window; missing outlet covers, prior repairs to settlement cracks in the garage; a cracked window; incomplete attic insulation; certain inoperable electrical switches; issues with a couple of door latches; missing window screens and door stoppers; ungrounded outlets in the basement, bedrooms and living room; an "uncapped" gas line at the oven; some missing insulation on lines to the A/C condenser and air handler and the presence of a Federal Pacific electrical panel, which presented a fire hazard. With the exception of the installation of a kitchen/basement handrailing, the buyers did not request that Sliman fix any of the issues identified in the home inspection report. The buyers hired an electrician to replace the electrical panel before they moved in.

{¶ 15} The buyers then hired Andrew Ieropoli with Advance Home Improvement, L.L.C. ("AHI"), a home remodeling company, to further investigate issues with the home. Ieropoli engaged a licensed plumber, electrician and structural engineer to assist with the investigation. During the investigation, drywall was removed from walls and ceilings in areas of concern to examine the plumbing, electrical and structural support systems. On September 18, 2018, Ieropoli submitted a "summary of observations," incorporating the reports and comments of the plumber, electrician and structural engineer who had been involved in the investigation. The summary identified 54 alleged "defects" and "building and housing code violations" affecting the home's electrical, plumbing, framing and structural support systems that were allegedly not disclosed by Sliman (the "defects/code violations").[2] According to Ieropoli, extensive demolition and repairs were necessary to expose and remedy these defects/code violations. The buyers claimed to have spent $91,569.59 to remedy the undisclosed defects/code violations identified by Ieropoli.

**Litigation Commences**

{¶ 16} On December 7, 2018, the buyers filed a complaint against the sellers in the Cuyahoga County Court of Common Pleas, asserting claims of (1) fraudulent concealment and misrepresentation, (2) brefdach of warranty as to quality of construction, (3) negligent construction/unworkmanlike performance and (4)

---

[2] In June 2020, Ieropoli submitted an expert report with a revised summary of observations that removed two previously identified defects/code violations and added three others.

breach of the purchase agreement. The first three claims were asserted against Sliman alone. The fourth claim was asserted against Sliman and Fowler.

{¶ 17} The sellers filed separate motions to dismiss the complaint pursuant to Civ.R. 12(B)(6). Sliman's motion to dismiss was granted as to the breach of warranty claim, but denied as to the remaining claims. Fowler's motion to dismiss was granted in part and denied in part as to the buyers' claim for breach of the purchase agreement.

{¶ 18} In March 2019, the buyers filed a motion for leave to correct their complaint by interlineation, which was unopposed and granted. On April 17, 2019, the buyers filed their amended complaint. As it relates to the fraud claim against Sliman, the complaint alleged that (1) Sliman had a duty to disclose any latent defects/code violations affecting the residence in the residential property disclosure form, (2) Sliman intentionally failed to obtain necessary permits and permit inspections for the renovation work he performed and had concealed latent defects/code violations behind drywall, (3) Sliman knowingly or recklessly made material, false representations and failed to disclose latent defects/code violations in the residential property disclosure form to induce the buyers to purchase the residence, (4) the buyers justifiably relied on Sliman's misrepresentations and concealment of latent defects/code violations in purchasing the residence and (5) the buyers sustained damages as a result. The buyers further alleged that Sliman's fraudulent acts and omissions were "willful, wanton and malicious." The buyers

sought to recover compensatory and punitive damages and reimbursement of their attorney fees and costs.

{¶ 19} On May 1, 2019, the sellers filed separate answers to the buyers' amended complaint, denying the material allegations of the complaint and asserting various affirmative defenses. The sellers also filed (1) a five-count counterclaim against the buyers for spoliation, frivolous conduct, abuse of process, malicious civil prosecution and civil conspiracy and (2) a third-party complaint against Crocker Realty Group LLC, d.b.a. Keller Williams Realty Greater Cleveland — West ("Crocker Realty Group") and Suzanne Edwards (the real estate company and agent who represented the sellers in the sale of the home to the buyers) for professional negligence and indemnification and/or contribution. The third-party complaint and most of the sellers' counterclaims were later dismissed.[3]

---

[3] On August 1, 2019, the trial court granted the buyers' motion to dismiss the sellers' counterclaims for frivolous conduct, malicious civil prosecution and civil conspiracy. On April 28, 2020, the trial court granted the sellers' motion to voluntarily dismiss all claims against third-party defendants Crocker Realty Group and Edwards with prejudice. On June 16, 2020, the sellers voluntarily dismissed their spoliation counterclaim against the buyers with prejudice. The record indicates that, at a telephone conference held on June 30, 2020, counsel for the sellers "indicated his intention to file a notice of dismissal of the remaining counterclaim pursuant to Civ.R. 41(A)." The record further reflects that, at a telephone conference held on July 13, 2020, "[t]he parties advised the court that they have dismissed all remaining claims and counterclaims." However, we see nothing in the record indicating that the sellers, in fact, dismissed their counterclaim for abuse of process. A final, appealable order, nevertheless, exists in this case based on the trial court's determination, as stated in its June 28, 2021 judgment entry, that there was "no just reason for delay" under Civ.R. 54(B). *See, e.g., Gen. Acc. Ins. Co. v. Ins. Co. of N. Am*, 44 Ohio St.3d 17, 20, 22-23, 540 N.E.2d 266 (1989)

**Motions for Summary Judgment**

{¶ 20} In May 2020, the parties filed cross-motions for summary judgment on the buyers' fraud claim. In their motion, the buyers argued that (1) Sliman had a duty, pursuant to R.C. 5302.30, to disclose material defects and building and housing code violations that affected the residence in the residential property disclosure form and (2) there was no genuine issue of material fact that Sliman had breached that duty and engaged in fraud. Specifically, the buyers argued that undisputed evidence established that Sliman knowingly failed to obtain necessary permits for the renovation work he performed on the home and that Sliman concealed and failed to disclose material defects and building and housing code violations that affected the residence in the residential property disclosure form. The buyers further argued that there was no genuine issue of material fact that Sliman signed the residential property disclosure form with knowledge of the falsity of its contents or, at the very least, with utter disregard and recklessness as to the truth of the representations made therein, that Sliman did so in order to induce the buyers to purchase the property, that the buyers justifiably relied on Sliman's misrepresentations and concealment in purchasing the property and that the buyers sustained substantial damages as result. The buyers requested a bifurcated hearing on attorney fees.

{¶ 21} In support of their motion, the buyers submitted an affidavit they had executed detailing (1) the circumstances surrounding their purchase of the property, (2) their retention of Ieropoli, (3) their post-purchase discovery of "numerous latent

material defects" affecting the property and (4) the $95,127.27 in costs they claimed to have incurred to "remedy all Defects/Violations." They also cited Sliman's deposition testimony and submitted copies of (1) Sliman's LinkedIn profile, (2) documents relating to Sliman's purchase of the property, (3) articles of organization for a limited liability company Sliman had allegedly formed, (4) an affidavit from Austin in which he described the work he performed on the residence and his conversation with Sliman regarding "pulling the permits," (5) the drawings for the renovations, (6) the building permit Sliman obtained for exterior windows, (7) the June 19, 2017 letter from the building inspector to Sliman regarding work performed on the residence and permitting requirements, (8) an affidavit from the building inspector detailing his observation of the residence and communications with Sliman regarding work performed on the residence and permitting requirements, (9) the MLS listing and "Home Updates" form for the property, (10) the residential property disclosure form, (11) the purchase agreement and addenda relating to the buyers' purchase of the property from the sellers, (12) reports from AHI and others retained by AHI regarding alleged "latent material defects" affecting the electrical, plumbing, framing and structural support systems and "various other building and housing code violations," (13) photographs of issues with the residence and (14) cancelled checks and other documentation supporting the damages claimed by the buyers.

{¶ 22} In his motion for summary judgment on the buyers' fraud claim, Sliman argued that he was entitled to summary judgment because the doctrine of

caveat emptor applied and barred the buyers' claim due to "lack of due diligence." He further argued that even if caveat emptor did not apply, the buyers could not establish the elements of their fraud claim because it was undisputed that (1) the buyers knew that the home had recently been renovated and that the renovation work had been performed by or at the direction of Sliman, (2) the buyers never requested copies of any licenses held by any of the contractors who worked on the home, (3) Sliman made no "guarantees or representations about the work performed on the home" and, specifically, did not represent that the work had been performed by licensed contractors, (4) the buyers had the opportunity to request further information regarding the work performed and to investigate whether Sliman had, in fact, obtained permits for the renovation work performed but failed to do so and (5) the plumbing and electrical systems functioned as expected when the buyers took possession of the house. Sliman also asserted he had "no knowledge of the Rocky River Code," that "any code violations were due to ignorance and not done with intent," that the plumbing issues identified by Ieropoli were "easily discoverable" and, therefore, could not be "considered fraudulent" and that a "competent inspection," prior to the sale, "should have located the issues" identified by Ieropoli. In support of his motion, Sliman cited to excerpts from the depositions of Margaret Fowerbaugh and Ieropoli.

{¶ 23} Sliman also filed an opposition to the buyers' motion for summary judgment on their fraud claim. With the exception of his recitation of case law

setting forth the standard on summary judgment, the sum and substance of Sliman's opposition was as follows:

> Plaintiff's brief for summary judgment cannot be well taken on its face, as even when viewed in a light most favorable to the moving party, which is not the standard, it is devoid of any and all basis for summary judgement. Plaintiff's motion makes several mentions of intentional misrepresentations on the part of Defendants; yet throughout their entire brief, they are unable to list one of these representations that was made by either Defendant. Further, any concealment alleged by Defendant's [sic] as alleged by plaintiffs was done via the placement of drywall. Plaintiffs here are attempting to use the use of drywall by defendant Sliman as concealment, when in fact it is a necessary material used in constructing homes.

> At no p[o]int in Plaintiff's brief are specific allegations made regarding intentional concealment, intentional failures to disclose latent defects, the actual existence of latent defects or Defendant Sliman's knowledge of said defects. All of these are elements of Plaintiff's claim and with out [sic] ALL of them they can not [sic] be successful. Here, they have failed to list even one specifically, let alone all of them. Further, their brief completely ignores their own deposition in which both plaintiffs admit that all systems for which they bring suit, functioned as they should. As a result, Plaintiff's brief is devoid of any actual basis for being well taken.

Sliman did not point to any evidence in the record in support of his opposition.[4]

**The Trial Court's Initial Summary Judgment Order**

{¶ 24} On June 18, 2020, the trial court entered an opinion and order granting the buyers' motion for summary judgment as to liability on their fraud claim and denying Sliman's motion for summary judgment. The trial court held that

---

[4] The parties thereafter filed expert reports. The reports were not supported by affidavits. Concluding that the parties' expert reports were not proper summary judgment evidence under Civ.R. 56(C), in its June 18, 2020 opinion and order, the trial court stated that it declined to consider them in ruling on the parties' cross-motions for summary judgment on the buyers' fraud claim.

"[b]ased on the record before the Court on the parties' cross-motions for summary judgment" and "construing the record in the light most favorable to [Sliman]," the buyers had "carried their burden of showing that the record supports a summary judgment in their favor" and established that "fraud on the part of the seller precludes application of the doctrine of caveat emptor to bar their claim." The trial court stated: "Where a property contains latent defects that are not easily discoverable, the doctrine will not prevent recovery for fraud based on misrepresentation or concealment. * * * Even the doctrine of caveat emptor obligates a seller to disclose materials facts that are not obvious."

{¶ 25} The trial court further noted that "no party contests as a matter of law that a failure to disclose work performed without proper permits constitutes a material term of the transaction," particularly given that the buyers had specifically inquired about the issue. The trial court held that "[o]n this record," a reasonable factfinder could only conclude that Sliman had actual knowledge that the renovation work he performed must strictly conform to code requirements, actual knowledge of the need for permits and actual knowledge of the conditions at issue. The trial court further held that, viewing the evidence presented in the light most favorable to Sliman, a reasonable factfinder could only conclude that Sliman had intentionally misrepresented — or "[a]t a minimum," showed reckless disregard for the truth of — the information disclosed to the buyers, that the buyers had reasonably and justifiably relied on Sliman's misrepresentations and omissions in the residential property disclosure form and to the parties' real estate agents and that the buyers

had sustained damages as a result of these misrepresentations and omissions. The trial court entered a separate order setting a hearing to "address the parties' respective evidence and arguments related to damages and [attorney] fees."

{¶ 26} The buyers dismissed their remaining claims against the sellers without prejudice on July 13, 2020.

{¶ 27} The parties waived their right to a jury trial on damages and the trial court scheduled a hearing to "address the parties' respective evidence and arguments related to damages and fees in this matter" (the "damages hearing"). On July 20, 2020, the parties filed a stipulated order regarding how evidence of compensatory and punitive damages and attorney fees should be presented and determined by the trial court. As to the determination of compensatory damages on the buyers' fraud claim, the parties stipulated that "the measure of compensatory damages" was "the reasonable cost of placing the Plaintiffs' home in the condition contemplated at the time they entered into the purchase agreement, same being the cost of remediating all material defects and code violations which were not disclosed within the residential disclosure form." The parties further agreed that they would exchange affidavits prior to the damages hearing "addressing their respective positions as to the compensatory damages sought by Plaintiffs." The parties also agreed that the expert reports the parties had previously exchanged would "not be supplemented or altered" and that the parties could examine and cross-examine the experts at the damages hearing regarding "the monetary amount for remediation of the aforenoted material defects and code violations."

{¶ 28} With respect to punitive damages and attorney fees, the parties further stipulated:

7. As to punitive damages under Count I, the Court shall make a determination, during or post-Hearing, as to whether the fraudulent actions and omissions undertaken by Defendant Sliman constituted malice, same being a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. Should the Court find in favor of Plaintiffs, the Court shall then address punitive damages the attorney fees and costs incurred by Plaintiffs as may be [sic] subject to a separate, in-person hearing.

8. As to attorney fees under Count I, 14 days prior such subsequent hearing, counsel for Plaintiff shall submit an affidavit together with a full billing statement associated with the fees incurred by Plaintiffs. The Court shall make a determination and the issue its ruling as to whether the affidavit and supporting documentation presented by Plaintiffs is sufficient, or shall be the subject of a separate hearing, at which time such expert and lay witnesses as the Parties elect shall testify. Alternatively, the Court may elect to rather accept affidavits and briefs in support of the position of the Parties, the Court to unilaterally set such schedule for briefing and presentment as it deems appropriate.

9. As to attorney fees under Count I, and in the event that the Court determines that an in-person hearing is appropriate, Plaintiffs shall submit their brief including expert report(s) and documents supporting their position 28 days in advance of the in-person hearing. Defendant shall thereafter tender its brief, rebuttal expert report(s) and supporting documents no later than 14 days after filing by Plaintiffs.

{¶ 29} The trial court approved the parties' stipulated order and entered an order stating that, in addition to the matters set forth in the parties' stipulation, the parties should "be prepared to argue at the hearing * * * whether the evidence in the record meets the standard set forth in paragraph 7 for malice/punitive damages."

{¶ 30} On August 11, 2020, the buyers filed an affidavit in support of damages, attaching documentation supporting the $91,569.59 in damages they were

then claiming as the cost of remediating the defects/code violations that were not disclosed in the residential property disclosure form.  Sliman did not file a counter affidavit on damages.

**Damages Hearing and Supplemental Briefing Relating to Summary Judgment and Damages**

{¶ 31} The damages hearing was conducted on September 11, 2020, and October 16, 2020.  The transcript from the hearing was not included in the record forwarded to this court on appeal.  Accordingly, it is unknown to this court what evidence was presented at the damages hearing.  At the conclusion of the damages hearing, the trial court ordered the parties to file supplemental briefs addressing two issues:

(1) Whether, based on the post-trial record, the court's summary judgment ruling should be modified or vacated in whole or in part?

(2) With citation to specific pages of the transcript and/or places in the record, the amount of a damages award, if damages are anything other than zero or in the full amount plaintiff seeks.

{¶ 32} On November 25, 2020, the parties filed supplemental briefs addressing these issues.  In their supplemental brief on summary judgment and damages, the buyers asserted that the trial court's June 18, 2020 order granting its motion for summary judgment was correct, that the trial court's decision was supported by undisputed facts in the record and that "[t]he transcript of the damages trial reinforces the Court's finding relative to intent, and more fully elucidates the egregious nature of the fraud because [of] the malicious behavior exhibited by Defendant Sliman."  In support of their assertions, the buyers cited

testimony Sliman purportedly offered at the damages hearing and various exhibits purportedly admitted at the damages hearing.

{¶ 33} With respect to the amount of compensatory damages to which they were allegedly entitled, the buyers pointed to the affidavit on damages they had submitted prior to the hearing and to testimony purportedly offered by Paul Fowerbaugh and Ieropoli at the damages hearing regarding the amounts the buyers had paid to AHI and the necessity of the work performed. The buyers contended that the amount of damages awarded, i.e., the "cost of remediating all material defects and code violations which were not disclosed within the residential property disclosure form," should be the full amount the buyers paid to AHI — $91,569.59 — for the work AHI performed to remedy issues with the residence after the sale. The buyers argued that because Sliman (1) had stipulated to the reasonableness of the cost of the repairs performed,[5] (2) had not presented sufficient evidence to rebut Ieropoli's testimony that the repairs performed were necessary and (3) had not offered any evidence "supporting a particular amount of offset which should be applied for any 'open and obvious' condition which should have been (or was) discovered upon reasonable inspection," the buyers "must be awarded $91,569.59."

---

[5] In their supplemental brief filed with the trial court after the damages hearing, the buyers asserted that Sliman, through his counsel, had stipulated to the reasonableness of the cost of the work performed to remedy the defects/code violations. According to the buyers, Sliman's counsel stated: "[W]e have no issue with that figure[;] should the Court find that all repairs are needed, that will be stipulated to." As noted above, because the transcript from the damages hearing was not included in the record on appeal, we are unable to confirm this. However, Sliman has not disputed that he made such a stipulation.

{¶ 34} With respect to punitive damages, the buyers argued that the evidence showed that Sliman had "exhibited a pattern of deception during every stage of the flip" and that they had established Sliman's conscious disregard for the buyers' "legal right" to receive truthful disclosures and their health and safety based on his "disregard for the legal mandates in the blueprints," his "disregard for the [building] inspector" and his "disregard for the * * * line of questions concerning permitting requirements * * * between the real estate agents." The buyers requested that the trial court schedule a hearing to determine the amount of punitive damages and reasonable attorney fees to which they were entitled.

{¶ 35} Following the damages hearing, Sliman submitted separate supplemental briefs (1) in support of vacating summary judgment and (2) regarding damages. Sliman did not cite to the transcript from the damages hearing and did not otherwise reference any specific evidence presented at the damages hearing in his supplemental briefs.

{¶ 36} In his supplemental brief in support of vacating summary judgment, Sliman argued that the trial court's summary judgment order should be vacated because it did not, "on its face," "follow the appropriate standard," i.e., that the trial court "intentionally did not consider certain evidence" and did not view all evidence in the light most favorable to Sliman. Reiterating, in large part, the arguments he had set forth in his motion for summary judgment on the buyers' fraud claim (and pointing only to the same deposition testimony from Margaret Fowerbaugh and Ieropoli he had cited in his motion for summary judgment), Sliman claimed that the

evidence showed that "multiple conditions" the buyers claimed were "latent defects" should have been found in a reasonable inspection. He also asserted, without any citation to the record, that Ieropoli had testified that he "did not consider himself to be an expert in ANY of the fields for which he was offering testimony" and that this "leaves a substantial issue of credibility regarding the expertise of Mr. Ieropoli that must be decided by a trier [of] fact at trial, rather than via summary judgment." Sliman further asserted, again, without any citation to the record, that his expert, Richard Kraly, had "raised a very key argument" at the damages hearing that "the majority of the houses built at the same time as the house in question, do not conform to modern codes * * * due to the evolving nature of building codes" and that the trier of fact should have, therefore, been permitted to decide whether "strict code conformity is the equivalent of a latent defect and therefore [m]aterial to the matter." He also argued that the housing inspector had an independent duty to perform an interior inspection of the residence based on his own observations, regardless of whether Sliman had lied to the inspector regarding the nature and extent of the renovations.

{¶ 37} In his supplemental brief regarding damages, Sliman "addresse[d] each area of repair as it is presented in [Kraly's] [e]xpert [r]eport," a copy of which was attached to the supplemental brief. Sliman argued that, based on the opinions Kraly expressed in his expert report, various items identified by Ieropoli should be "deducted from the award of damages" because they were "open and obvious," had been "marked as being satisfactory," referenced the "wrong code," were functionally

equivalent to proper repairs, were "minor" and "did not require the extent of intrusive repairs" performed by Ieropoli or existed, not because of work performed by Sliman, but because the house was nearly 90 years old.  Claiming that it was "difficult to make line item deductions" for repairs that were made to the residence for which he contended he should not be liable, Sliman requested that the trial court "apply proportional offsets" to the buyers' cost of repairs and that "any line items found to be improper by the court * * * be deducted at a proportional rate."  Sliman did not, however, identify the dollar amount of any "proportional offsets" he believed the trial court should apply.

### The Trial Court's Further Orders on Summary Judgment and Damages

{¶ 38} On March 19, 2021, the trial court issued a further order on summary judgment and damages.  The trial court stated that it had "considered all arguments," determined that "the court's ruling on summary judgment shall not be modified or vacated in whole or in part" and awarded the buyers $91,569.59 in compensatory damages.  The trial court indicated that it would address the issue of punitive damages and the buyers' request for attorney fees at a telephone conference scheduled for April 6, 2021.  The court indicated that it would "not require expert testimony" but that "either side may choose to call an expert witness."  The telephone conference was later cancelled.[6]

---

[6] In its June 23, 2021 opinion and order, the trial court stated that the telephone conference was cancelled at the request of the parties.

{¶ 39} On April 2, 2021, the buyers filed a brief addressing punitive damages and attorney fees. The buyers argued that the evidence set forth in their November 25, 2020 supplemental brief and presented at the damages hearing established that Sliman had consciously disregarded the buyers' rights and their health and safety when he failed to disclose the defects/code violations in the residential property disclosure form. They further argued that evidence established that these "hidden conditions" posed a great probability of substantial harm because "there were so many," they were not just "cosmetic elements" but affected the home's electrical, plumbing and framing and structural support systems and it cost the buyers $91,569.59 to remedy them. The buyers requested that the trial court award them "no less than a nominal judgment in the amount of $1.00 * * * for punitive damages" to "trigger reimbursement" of their reasonable attorney fees. They also attached an affidavit from their counsel, detailing the work performed on the case and the attorney fees incurred, along with copies of counsel's full transactional billing statements related to the matter. The buyers requested that they be awarded $82,985.62 in attorney fees "charged and paid" relating to the matter and $2,760.50 in costs. Sliman did not file an opposition.

{¶ 40} On June 23, 2021, the trial court issued an opinion and order awarding the buyers $1.00 in punitive damages, $82,985.62 in attorney fees and $2,760.50 in costs. The trial court stated, in relevant part:

> The court, after due consideration, finds that defendants exhibited actual malice through a conscious disregard for the rights and safety of plaintiffs that had a great probability of causing substantial harm. * * *

Defendants had actual knowledge of at least some of the defects, local code requirements and need for permits, yet fraudulently failed to disclose such defects, and their failure to obtain necessary permits, to plaintiffs. The nature and amount of such defects had a great probability of causing substantial harm, both physically and financially, to plaintiffs. In fact, plaintiffs incurred compensatory damages of $91,569.56 to repair the defects. * * *

Accordingly, for the foregoing reasons, and the court's previous orders granting summary judgment in favor of plaintiffs and awarding compensatory damages, the court hereby awards plaintiffs $1.00 in punitive damages, reasonable attorney fees of $82,985.62 and costs of $2,760.50.

{¶ 41} On June 28, 2021, the trial court issued an order "nunc pro tunc entry"[7] "as of and for" its June 23, 2021 order, indicating that "[t]he court inadvertently left out the final and appealable language from its initial entry" and further stating: "Opinion and order osj. Final and appealable. There is no just reason for delay."

{¶ 42} Sliman appealed, raising the following two assignments of error for review:

Assignment of Error No. 1
The trial court erred when ordering summary judgment for the Appellee[s].

Assignment of Error No. 2
The trial court abused its discretion when awarding attorney fees in this matter.

---

[7] Because the parties have not raised the issue and because it does not affect our resolution of this appeal, we do not address whether the trial court's June 28, 2021 order was properly characterized as a "nunc pro tunc entry."

**Law and Analysis**

**Summary Judgment as to Liability on Fraud Claim**

{¶ 43} In his first assignment of error, Sliman argues that the trial court erred in granting summary judgment in favor of the buyers as to liability on their fraud claim because the "order was made prematurely, and without consider[ation] of all facts and inferences drawn in a light most favorable to [Sliman]."

**Standard of Review**

{¶ 44} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 45} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 46} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving

party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

### Liability on the Buyers' Fraud Claim

{¶ 47} As a general rule, Ohio follows the doctrine of caveat emptor in real estate transactions. Caveat emptor precludes a purchaser from recovering for a structural defect if "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." *Layman v. Binns*, 35 Ohio St.3d 176, 519 N.E.2d 642 (1988), syllabus. The doctrine of caveat emptor "'is designed to finalize real estate transactions by preventing disappointed real estate buyers from litigating every imperfection existing in residential property.'" *Nieberding v. Barrante*, 8th Dist. Cuyahoga No. 110103, 2021-Ohio-2593, ¶ 30, quoting *Thaler v. Zovko*, 11th Dist. Lake No. 2008-L-091, 2008-Ohio-6881, ¶ 31. However, a seller may still be liable to a buyer if the seller fails to disclose known latent conditions or otherwise engages in fraud. *See, e.g., Morgan v. Cohen*, 8th Dist. Cuyahoga No. 107955, 2019-Ohio-3662, ¶ 35; *see also Binns* at 178 ("a vendor has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection").

{¶ 48} To prevail on their fraud claim, the buyers needed to establish the following elements: (1) a representation of fact (or concealment of a fact where there is a duty to disclose); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation (or concealment) and (6) resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

{¶ 49} R.C. 5302.30(C) and (D) require that a seller of residential real estate complete and deliver to a prospective purchaser a residential property disclosure form disclosing "material matters relating to the physical condition of the property" and "any material defects in the property" that are "within the actual knowledge" of the seller. *See also Hendry v. Lupica*, 8th Dist. Cuyahoga No. 105839, 2018-Ohio-291, ¶ 7 ("'R.C. 5302.30 requires sellers of real estate to disclose patent or latent defects that are within their actual knowledge on a residential property disclosure form.'"), quoting *Wallington v. Hageman*, 8th Dist. Cuyahoga No. 94763, 2010-Ohio-6181, ¶ 17. R.C. 5302.30(E)(1) states that "[e]ach disclosure of an item of information that is required to be made in the property disclosure form * * * and each act that may be performed in making any disclosure of an item of information shall be made or performed in good faith." "Good faith" means "honesty in fact." R.C. 5302.30(A)(1).

{¶ 50} If a seller fails to disclose a material fact on the residential property disclosure form with the intent to mislead a buyer and the buyer relies on the residential property disclosure form, the seller may be liable for any resulting injury. *Morgan* at ¶ 38; *Wallington*, 2010-Ohio-6181, at ¶ 18; *Pedone v. Demarchi*, 8th Dist. Cuyahoga No. 88667, 2007-Ohio-6809, ¶ 31. Where, however, a party "'has had the opportunity to inspect the property, he is charged with knowledge of the conditions that a reasonable inspection would have disclosed.'" *Pedone* at ¶ 33, quoting *Nunez v. J.L. Sims Co., Inc.*, 1st Dist. Hamilton No. C-020599, 2003-Ohio-3386, ¶ 17. "[T]he duty to conduct a full inspection falls on the purchasers and the disclosure form does not function as a substitute for such careful inspection." *Roberts v. McCoy*, 2017-Ohio-1329, 88 N.E.3d 422, ¶ 17 (12th Dist.).

{¶ 51} As detailed above, the buyers based their fraud claim on over 50 alleged defects/code violations Ieropoli identified in the home's plumbing, electrical, framing and structural support systems that were not disclosed in the residential property disclosure form. There is no dispute that Sliman represented, in the residential property disclosure form, that he knew of no "violations of building or housing codes * * * affecting the property," no "problems or defects" affecting the residence's mechanical systems (including the electrical and plumbing systems), no material problems affecting any structural components and no other known material defects affecting the property.

{¶ 52} In his appellate brief, Sliman admits that he "made serious errors when renovating the * * * home." He also acknowledges that there is no genuine

issue of material fact that — aside for the permit he obtained for the replacement of the exterior windows — he did not obtain building permits for his renovation work and he did not tell the building inspector that he was altering framing, HVAC, electrical or plumbing in the home — work that required permits — when they met in June 2017. Although Sliman expressly "concedes" on appeal that he "did not complete his renovations with building permits or disclose defects," he asserts that his "misdeeds" do not bar the application of the doctrine of caveat emptor "on the patent defects observed by the home inspector." He contends that because fifteen of the defects/code violations at issue were "explicitly identified" in the home inspection report and because "additional ones" (when viewed in the light most favorable to Sliman) were "easily identifiable" or "easily observable," the trial court erred in granting summary judgment in favor of the buyers as to liability on their fraud claim.

{¶ 53} Even assuming that certain of the defects/code violations Ieropoli identified were patent defects that were observed (or should have been observed) by the buyers or their home inspector before the buyers purchased the home, that would not preclude Sliman from liability for, or for the buyers to recover damages resulting from, Sliman's fraudulent concealment of and misrepresentations relating to any material, latent defects/code violations. Although Sliman contends that certain of the defects/code violations identified by Ieropoli were patent defects, Sliman does not dispute that there were other material, latent defects/code violations — of which Sliman was aware — that were not reasonably observable by

the buyers or the home inspector during their inspections of the home and that were not disclosed to the buyers prior to their purchase of the home. *See* appellant's brief at 19-20 ("Here, caveat emptor should bar *the majority* of the [a]ppellee[s'] claims. \* \* \* *[M]any of the defects* claimed as fraudulent were patently observed.") (Emphasis added.) Sliman does not dispute that, as to those material, latent defects/code violations, he breached a duty of disclosure owed to the buyers under R.C. 5302.30 based on his misrepresentations in the residential property disclosure form.

{¶ 54} Sliman's argument that certain of the defects/code violations were patent defects goes to the amount of compensatory damages the buyers were entitled to recover on their fraud claim, not to whether the trial court properly found Sliman liable on the buyers' fraud claim. If, in fact, certain of the defects/code violations were "open and obvious," the cost of remedying such defects/code violations should have been excluded from the damages awarded to the buyers. Sliman, however, has not challenged the trial court's determination that the buyers were entitled to $91,569.59 in compensatory damages for remediation of the defects/code violations that were not disclosed in the residential property disclosure form in this appeal. Nor did Sliman meaningfully challenge the amount of the buyers' claimed damages below. Although the trial court specifically directed the parties (in its October 16, 2020 order requesting supplemental briefing after the damages hearing) to file briefs identifying "the amount of a damages award, if damages are anything other than zero or in the full amount plaintiff seeks," Sliman

failed to do so. Sliman never identified any amount by which he claimed the buyers' alleged damages should have been reduced to account for the fact that certain of the defects/code violations identified by Ieropoli had been allegedly identified by the buyers' home inspector or were otherwise "open and obvious" and readily observable upon a reasonable inspection.

{¶ 55} Based on Sliman's concessions on appeal and the evidence presented below, we find no error by trial court in granting summary judgment in favor of the buyers as to liability on their fraud claim. As the trial court found and as detailed above, the buyers met their initial burden on summary judgment, pointing to evidence of specific facts in the record establishing each essential element of their fraud claim. Sliman, however, failed to meet his reciprocal burden to present evidence of specific facts demonstrating a genuine issue of fact for trial.[8]

{¶ 56} Sliman's first assignment of error is overruled.

**Attorney-Fees Award**

{¶ 57} In his second assignment of error, Sliman contends that the trial court abused its discretion in awarding the buyers $82,985.62 in attorney fees on their fraud claim. Sliman does not challenge the reasonableness of the attorney-fees

---

[8] On appeal, Sliman also argues that Ieropoli's "structural opinions" must be viewed "with skepticism" because he was an "interested witness," he was not a licensed structural engineer and he did not submit a notarized copy of the structural engineer's report. Based on the record before us, it does not appear that Sliman raised these arguments below. Accordingly, we will not consider them for the first time on appeal. *See, e.g., Scott Fetzer Co. v. Miley*, 8th Dist. Cuyahoga No. 108090 2019-Ohio-4578, ¶ 41 (noting that arguments raised for the first time on appeal are generally barred and that a reviewing court need not consider issues that the appellant failed to raise in the trial court).

award. He challenges only the trial court's determination that the buyers were entitled to any award of attorney fees based on the trial court's findings and the evidence presented below.

{¶ 58} Citing the "American Rule" and this court's decision in *O'Brien v. Shorey*, 8th Dist. Cuyahoga No. 110000, 2021-Ohio-2519, Sliman argues that the trial court was required to find "bad faith" — i.e., "conduct amounting to 'dishonest purpose,' 'moral obliquity,' 'a breach of a known duty through some motive of interest or ill will,' or 'partakes of the nature of fraud with an actual intent to mislead or deceive another,'" *In re Estate of Abraitis*, 8th Dist. Cuyahoga No. 104816, 2017-Ohio-5577, ¶ 14, quoting *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 8 — in order to award attorney fees in this case, and that the trial court's attorney-fees award was unreasonable, arbitrary and unconscionable because he did not act in bad faith. Sliman contends that, although "he made substantial errors in judgment in some aspects of the renovation," he did not act in bad faith because his conduct "was not deceptive in nature," he was "not motivated by dishonesty" and "[t]he errors were largely observable to the parties" and the home inspector.

{¶ 59} In support of his contention that he did not act in bad faith, Sliman points only to certain evidence presented by the parties on summary judgment, i.e., deposition testimony by the buyers describing the home as "beautiful" and Sliman as a "good finish carpenter," deposition testimony by Ieropoli regarding the sanitary tee that had been installed at the residence (i.e., that it worked in some applications

but was not approved by code and was "relatively the same price"), the permit Sliman obtained for replacement of exterior windows and the home inspection report. Sliman does not point to any evidence in the record regarding his knowledge (or lack of knowledge) of the matters at issue, his representations to the buyers or his intentions in making those representations. Sliman, likewise, does not point to any evidence presented by the parties at the damages hearing.

{¶ 60} Under the "American Rule," each party is generally responsible for his or her own attorney fees. *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 9, citing *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. However, there are certain exceptions to the American Rule.

{¶ 61} One such "exception" "allows an award of attorney fees to the prevailing party as an element of compensatory damages when the jury finds that punitive damages are warranted." *Phoenix Lighting* at ¶ 9, citing *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 558, 644 N.E.2d 397 (1994), and *New York, Chicago & St. Louis RR. Co. v. Grodek*, 127 Ohio St. 22, 24-25, 186 N.E. 733 (1933) ("facts which justify the infliction of exemplary damages will also justify the jury in adding the amount of counsel fees to the verdict, not as a part of exemplary damages, but as compensatory damages"); *see also Galmish v. Cicchini*, 90 Ohio St.3d 22, 35, 734 N.E.2d 782 (2000) ("'If punitive damages are proper, the aggrieved party may also recover reasonable attorney fees.' * * * In other words, 'attorney fees may be awarded as an element of compensatory damages where the jury finds that punitive

damages are warranted.'"), quoting *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 183, 327 N.E.2d 654 (1975), and *Zoppo* at 558.

{¶ 62} Pursuant to R.C. 2315.21(C), punitive damages are recoverable from a defendant in a tort action where both of the following apply:

> (1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.
>
> (2) The trier of fact has returned a verdict or has made a determination * * * of the total compensatory damages recoverable by the plaintiff from that defendant.

R.C. 2315.21(C).

{¶ 63} The "actual malice" necessary for an award of punitive damages has been defined as (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Sivit v. Village Green of Beachwood, L.P.*, 143 Ohio St.3d 168, 2015-Ohio-1193, 35 N.E.3d 508, ¶ 7; *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), syllabus; *Leeds v. Weltman, Weinberg & Reis Co., L.P.A.*, 8th Dist. Cuyahoga No. 110348, 2021-Ohio-4123, ¶ 60.

{¶ 64} In this case, the parties stipulated in their July 20, 2020 stipulated order on damages that, as to punitive damages, "the Court shall make a determination, during or post-Hearing, as to whether the fraudulent actions and omissions undertaken by Defendant Sliman constituted malice, same being a

conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."

{¶ 65} Whether malice exists is a question for the trier of fact. *See, e.g., Al-Aroud v. McCoy*, 5th Dist. Stark No. 2021 CA 00003, 2021-Ohio-3832, ¶ 35; *Spires v. Oxford Mining Co., LLC*, 2018-Ohio-2769, 116 N.E.3d 717, ¶ 32 (7th Dist.); R.C. 2315.21(D)(1). "'The same standard of review is employed to assess the weight of evidence whether the finding is for compensatory damages or the elements necessary to justify an award of punitive damages.'" *Al-Aroud* at ¶ 35, quoting *Spires* at ¶ 32. Factual determinations will not be overturned if they are supported by some competent, credible evidence going to all the essential elements of the case. *Al-Aroud* at ¶ 35.

{¶ 66} In this case, the trial court awarded the buyers attorney fees after finding that they were entitled to recover punitive damages and awarding them nominal punitive damages. The trial court considered the evidence presented by the parties on the issue of punitive damages and found that Sliman "exhibited actual malice through a conscious disregard for the rights and safety of plaintiffs that had a great probability of causing substantial harm." The trial court further found that Sliman had "actual knowledge of at least some of the defects, local code requirement and need for permits, yet fraudulently failed to disclose such defects, and [his] failure to obtain necessary permits" to the buyers and that "[t]he nature and amount of such defects had a great probability of causing substantial harm, both physically and financially, to plaintiffs." It was based on those findings that the trial court

awarded the buyers punitive damages and attorney fees. The trial court's findings were sufficient to support an award of punitive damages and reasonable attorney fees to the buyers under Ohio law. *See Phoenix Lighting*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, at ¶ 9; *Galmish*, 90 Ohio St.3d at 35, 734 N.E.2d 782.

{¶ 67} Sliman has not challenged the trial court's punitive damages award or its determination that the buyers were entitled to recover punitive damages on appeal, and he has not pointed to anything in the record that shows that the trial court's finding that Sliman exhibited a conscious disregard for the rights and safety of the buyers that had a great probability of causing substantial harm was not supported by competent, credible evidence. [9] Accordingly, Sliman has not shown

---

[9] As noted above, the transcript of the damages hearing was not included in the record forwarded to this court on appeal. It is the appellant's duty to ensure the completeness of the record on appeal. *See, e.g., O'Donnell v. Northeast Ohio Neighborhood Health Servs.*, 8th Dist. Cuyahoga No. 198541, 2020-Ohio-1609, ¶ 75, fn. 6 ("The appellant has a duty to ensure that the record relating to his or her assignments of error is complete."); *Pietrangelo v. Hudson*, 2019-Ohio-1988, 136 N.E.3d 867, ¶ 22 (8th Dist.) ("It is the appellant's duty to ensure that this court is provided with all of the information needed to decide an assignment of error."). Accordingly, as to any findings made based on evidence presented at that hearing, we "must 'presume that the trial court considered all the evidence and arguments raised' and that sufficient evidence was presented to support the trial court's decision." *V.C. v. O.C.*, 8th Dist. Cuyahoga No. 109988, 2021-Ohio-1491, ¶ 65, quoting *Miranda v. Saratoga Diagnostics*, 2012-Ohio-2633, 972 N.E.2d 145, ¶ 26 (8th Dist.); *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980) ("When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and, thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.").

In any event, because Sliman has not cited to any evidence allegedly presented at the damages hearing in support of his assignments of error, we need not further consider the issue. *See Mathews v. Cooper*, 8th Dist. Cuyahoga No. 109974, 2021-Ohio-2768, ¶ 82, fn. 10 ("If an argument exists that can support an assignment of error, "'it is not this court's duty to root it out."'"), quoting *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 72, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, 22 (May 6, 1998); *see also* App.R. 16(A)(7) (An

that the trial court erred or abused its discretion in awarding the buyers their reasonable attorney fees.

{¶ 68} Sliman's second assignment of error is overruled.

{¶ 69} Judgment affirmed.

It is ordered that appellees recover from appellant the costs herein taxed.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
JAMES A. BROGAN, J.,* CONCUR

*(Sitting by assignment: James A. Brogan, J., retired, of the Second District Court of Appeals.)

---

appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the * * * parts of the record on which appellant relies."); *Story v. Story*, 8th Dist. Cuyahoga No. 109850, 2021-Ohio-2439, ¶ 29 ("An appellate court may disregard an assignment of error presented for review if the appellant fails to identify in the record the error on which the assignment of error is based."), citing App.R. 12(A)(2).