[Cite as *Best Motors, L.L.C. v. Kaba*, 2025-Ohio-640.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| BEST MOTORS, L.L.C., | : | |
| Plaintiff-Appellee, | : | |
| | | Nos. 113437 and 114145 |
| v. | : | |
| CHEICK KABA, ET AL., | : | |
| Defendants-Appellants. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 27, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-20-935889, GR-24-024695, and JL-24-193932

### *Appearances:*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and
Komlavi Atsou, *for appellee.*

Cheick Kaba, *pro se.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Pro se defendant-appellant, Cheick Kaba ("Cheick"), appeals a judgment, rendered following a bench trial, awarding monetary damages in the amount of $161,047.80 to plaintiff-appellee, Best Motors L.L.C. ("Best Motors"). Kaba claims the following errors:

1. The trial court's factual findings in support of judgment is inconsistent with this court's finding in [favor of] Best Motors, L.L.C. and thus warrant[s] reversal.

2. The trial court committed reversible error in denying appellant's motion to dismiss complaint without complying with Civ.R. 12(B)(6) and 56.

3. The trial court committed prejudicial error in conducting proceedings and/or trial in appellant's absence without proper service of notice.

4. The trial court committed prejudicial error in denying without reason appellant's unopposed request for leave to file instanter counterclaim against Best Motors. (Cleaned up.)

5. The trial court erred as a matter of law in failing to compl[y] with the requirement[s] of Civ.R. 60(B) and Loc.R. 7(B).

6. Appellant was denied of his rights to a fair trial when he [was] tried by judge who refused to recuse[] herself because she has interest in the particular outcome of the case.

7. The appellee is not entitled to relief as required by law where the record demonstrates, that it is appellee's greed [and] willful neglig[ence] [that] contributed to its purported loss and the trial court's failure to adjudicate this issue denied appellant of the right to a fair trial.

8. The trial court judgment and award of damages plus attorney fees, punitive damages award, in the sum of $168,433.28 as [of] August 15, 2024, plus interest at a rate of 5 [percent] per annum is contrary to law.

9. The trial court erred in denying appellant's motion to quash or terminate appellee's judgment of lien without complying with . . . Civ.R. 50 and 62 of [the Ohio Rules of Civil Procedure.]

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Best Motors filed a complaint against Cheick and codefendant Bangaly Kaba ("Bangaly"), asserting claims for breach of contract, unjust enrichment, fraud,

civil theft, conversion, and civil conspiracy. The complaint alleged that, on May 26, 2020, Cheick contacted Best Motors offering to sell a 2019 Toyota Land Cruiser. Hani Atta ("Atta"), the owner of Best Motors, met with Cheick, inspected the vehicle, and agreed to buy it for $46,000. Cheick, who negotiated the sale, represented to Atta that his cousin, Bangaly, had the certificate of title in his possession in New York, where he lived. At Cheick's request, Best Motors paid a deposit of $2,000 in cash to hold the car until Bangaly returned to Cleveland with the title. Cheick gave Best Motors a receipt showing the $2,000 cash deposit.

{¶ 4} On July 1, 2020, the parties executed a bill of sale and transferred possession of the vehicle. Cheick and Bangaly insisted that Best Motors pay for the car in cash, and Best Motors paid the remaining $44,000 owed on the contract via a cashier's check made payable to Bangaly. Bangaly cashed the check the same day and delivered an open certificate of title that listed the owner as "Brandon A. Trapp." Cheick and Bangaly represented that they had acquired the car from Brandon A. Trapp and could deliver valid title to Best Motors. However, when Best Motors subsequently attempted to transfer the title, it discovered that the vehicle was stolen and that Cheick and Bangaly had no right to sell it. Atta attempted to stop payment on the cashier's check, but it was too late. Atta filed a police report for the stolen car, and the car was seized by police. As a result of these events, Best Motors filed suit against Cheick and Bangaly to recover the $46,000 paid for the car. In the prayer for relief, the complaint also requested punitive damages and attorney fees.

{¶ 5} Cheick filed an answer and defended against the allegations in the complaint. As part of discovery, Best Motors' attorney deposed Cheick, who invoked his Fifth Amendment privilege against self-incrimination and refused to answer questions about his relationship with Bangaly or the vehicle. Best Motors moved for default judgment against Bangaly, and the trial court granted the motion. Best Motors claims that it never executed on the judgment against Bangaly because he has no known assets and because Best Motors has been unable to locate him.

{¶ 6} Meanwhile, Best Motors filed a motion for summary judgment against Cheick. Cheick opposed the motion, arguing, among other things, that he was not a party to the contract on which Best Motors' complaint was based. He asserted that the bill of sale and certificate of title indicate that Bangaly was the sole seller involved in the transaction. Cheick also claimed there was no evidence that he knew the car was stolen since Bangaly was in possession of the title.

{¶ 7} The trial court granted Best Motors' motion for summary judgment and entered judgment against Cheick in the amount of $151,972.30. Cheick appealed, and we reversed the trial court's judgment on grounds that there were genuine issues of material fact as to whether Cheick was a party to the contract and whether he knew the vehicle was stolen. *Best Motors, L.L.C. v. Kaba*, 2023-Ohio-804 (8th Dist.) ("*Best Motors I*").

{¶ 8} On remand, Cheick filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6), arguing that (1) Best Motors's claims were barred by res judicata, (2) the complaint is predicated on material falsehoods, and (3) the complaint is

devoid of any credible evidence to support Best Motors' claims against Cheick "as rightfully determined by the Eighth District Court of Appeals." (Motion to dismiss filed June 1, 2023, p. 1.) The trial court denied the motion on grounds that the complaint contained sufficient allegations to state claims on which relief might be granted. The court also noted that Best Motors pleaded its fraud claim with specificity as required under Civ.R. 9(B).

{¶ 9} On remand, the trial court also conducted a telephone pretrial on June 5, 2023. Cheick appeared pro se, but Best Motors' counsel failed to appear. The court scheduled another pretrial by way of a journal entry dated June 5, 2023. The journal entry included the following warning:

> Parties are on notice that failure of plaintiff to appear at any future date will result in dismissal without prejudice for failure to prosecute and failure of defendant to appear at any future date will result in judgment rendered in favor of plaintiff without further notice.

{¶ 10} The docket reflects that the June 5, 2023 journal entry was sent by regular mail to Cheick at the Harvard Avenue address he provided to the court as his mailing address. There is no indication on the docket that the mail was ever returned to the clerk of courts as undeliverable or undelivered.

{¶ 11} On June 13, 2023, the court held another pretrial and Cheick failed to appear. In a journal entry dated June 13, 2023, the court stated:

> Pretrial called 06/13/23. Counsel for plaintiff was present. Defendants failed to appear. The Court was unable to reach defendant Cheick Kaba by phone. Parties are on notice that failure of plaintiff to appear at any future date will result in dismissal without prejudice for failure to prosecute and failure of defendant to appear at any future date will

result [in] judgment rendered in favor of plaintiff without further notice.

{¶ 12} The docket shows that the June 13, 2023 journal entry was sent by regular mail to Cheick at his mailing address on Harvard Avenue in Cleveland. And again, there is no indication on the docket that the mail was ever returned to the clerk of courts as undeliverable or undelivered.

{¶ 13} The trial court issued another journal entry the next day, June 14, 2023, scheduling a final pretrial and settlement conference for August 17, 2023. The journal entry ordered all parties with ultimate settlement authority to be present in person. The journal entry further warned that "failure to appear at any set date will result in judgment being rendered or dismissal with prejudice pursuant to Civ.R. 41(B) as well as possible sanctions." As with all the court's journal entries, notice of this entry was sent to Cheick by regular mail at his mailing address on Harvard Avenue in Cleveland, and there is no indication that it was ever returned as undeliverable or undelivered.

{¶ 14} On June 23, 2023, Cheick filed a motion to vacate the June 13, 2023 journal entry that indicated that he failed to appear. He argued the journal entry should be vacated because he had no notice of the pretrial. The trial court denied the motion. In a journal entry dated June 27, 2023, the court explained there was nothing to vacate since judgment was not entered against Cheick. The court's June 27, 2023 journal entry further stated, in relevant part:

> Defendant claims in his motion that he did not receive notice of the hearing. However, upon review of defendant's affidavit and supporting

exhibits, defendant did receive notice of the hearing and copies of all journal entries issued by this court. Defendant appears to argue that he did not receive timely notice of the telephone pretrial. This court is not responsible for any delay in delivery that may be attributable to the United States Postal Service. Defendant has indicated that he prefers to receive correspondence by mail, not email. However, if he chooses, he could request pro se electronic filing access on this case by completing an electronic filing registration form. . . . The court has noted that on more than one occasion it has attempted to contact defendant by phone but could not do so and could not leave a voice message. . . . Defendant can also check the status of his case online through the clerk of court website and docket.

{¶ 15} The court conducted the final pretrial as scheduled on August 17, 2023, and Cheick failed to appear. In a journal entry, dated August 21, 2023, the court stated, in relevant part:

Pretrial called 08/17/23. Plaintiff present with counsel. Defendant Cheick Kaba failed to appear. Failure to appear at any future date will result in sanctions. This matter to go forward to trial on 09/25/23. Counsel and all parties to be present at 10:00 a.m. . . . Failure of any kind of any party to appear in person will result in sanctions including dismissal of the case and/or judgment being rendered.

{¶ 16} Thereafter, on August 30, 2023, the court issued another journal entry to address Cheick's claim that he was not receiving court notices. The August 30, 2023 journal entry states, in relevant part:

The court is in receipt of Defendant Cheick Kaba's "Notice of lack of service and improper services" filed 08/29/23. Defendant attempts to bring to the court's attention "irregularities in the services of court notices on this defendant." Defendant claims to have "experienced a complete lack of services of court's entry, including, but not limited to, the last judgment entry of the court." Defendant further claims that he has been prejudiced by "lack of services or delayed services of notices." As previously ordered by the court, defendant filed a "Notice of email address/telephone number" on 08/29/23. Defendant states that he received "a notice of this court on 08/28/23 at 4:15 p.m. via regular mail USPS." Presumably, this is how defendant became aware that he had been instructed to file his contact information with the court. The

docket reflects that the clerk of courts has sent notice of all journal entries to defendant by regular mail. The issue is not a lack of service as defendant claims. Instead, defendant takes issue with delay resulting from the USPS. Any such delay is due to external circumstances and not attributable to the clerk of courts itself. As stated in the court's 06/27/23 journal entry, defendant can check the status of his case online[.] . . . As also stated in the court's 06/27/23 journal entry, defendant can request pro se access as an authorized user in an existing case by completing an electronic filing registration form with the court's e-filing department. . . . Defendant should familiarize himself with the court's August 21, 2023 journal entry regarding the 09/25/23 trial in this matter. Lastly, all parties are afforded equal treatment. Pro se litigants are presumed to have knowledge of the law and legal procedures, and are held to the same standard as litigants who are represented by counsel and must accept the results of their own mistakes and errors.

{¶ 17} On September 13, 2023, Cheick filed a motion for recusal, asking the assigned judge to recuse herself. The trial court denied the motion on grounds that it lacked authority to grant the relief requested. Thereafter, on September 25, 2023, the day of trial, Cheick filed an affidavit of disqualification in the Ohio Supreme Court. In response, the court issued a journal entry stating, in relevant part:

> The court was advised that the defendant filed an affidavit of disqualification in the Supreme Court of Ohio on 09/25/23. The court was also advised that defendant attested in his affidavit that there was no hearing date set in this matter. The court finds that defendant had ample notice of the 09/25/23 trial date. The court further finds pursuant to R.C. 2701.03(D)(2)(a), the affidavit was not timely filed and this court has jurisdiction to preside in this proceeding. It is so ordered.[1]

---

[1] R.C. 2701.03(B) provides that "[a]n affidavit of disqualification filed under section 2101.39, 2501.13, 2701.031, or 2743.041 of the Revised Code or division (A) of this section shall be filed with the clerk of the supreme court not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled." R.C. 2701.03(D)(2)(a) provides that if an affidavit of disqualification is filed against a judge, the judge may nevertheless "preside in the proceeding . . . [i]f, based on the scheduled

{¶ 18} Thereafter, the trial court called the case for trial, and Cheick failed to appear. Counsel for Best Motors outlined the evidence in its possession demonstrating that Cheick conspired with Bangaly to knowingly sell a stolen car to Best Motors and that Best Motors gave Cheick and Bangaly a $2,000 cash down payment and a cashier's check in the amount of $44,000 to purchase the vehicle. Counsel presented copies of the bill of sale, the cashier's check, the receipt for the cash, and the certificate of title, and Atta verified that counsel's representations of the facts and evidence were true and accurate. (Tr. 13-14.)

{¶ 19} Based on the evidence presented, the trial court awarded Best Motors compensatory damages of $46,000, punitive damages of $92,000, attorney fees of $22,620, and $427.80 in costs for total of $161,047.80 in damages, plus interest at a rate of five percent per annum.

{¶ 20} Cheick filed a timely notice of appeal. After the appeal was filed, Cheick filed a motion for relief from judgment pursuant to Civ.R. 60(B). We remanded the case to allow the trial court to rule on the Civ.R. 60(B) motion, and the trial court denied it. Cheick filed another notice of appeal of the trial court's judgment. The two appeals have been consolidated and are now ripe for review.

---

hearing date, the affidavit was not timely filed." The Ohio Supreme Court later dismissed Cheick's affidavit of disqualification because it was not timely filed.

## II. Law and Analysis

### A. Trial Court's Findings

{¶ 21} In the first assignment of error, Cheick argues the trial court erred in rendering judgment against him at trial because the trial court's verdict is inconsistent with this court's decision in *Best Motors I*.

{¶ 22} In *Best Motors I*, we reversed the trial court's order granting summary judgment in favor of Best Motors. Based on the bill of sale, the receipt for the $2,000 the certificate of title, and Atta's affidavit, we found there were genuine issues of material fact as to whether Cheick was involved in the contract to sell the 2019 Toyota Land Cruiser to Best Motors because only Bangaly's name appears on the bill of sale and the cashier's check was made payable to Bangaly alone. We, therefore, remanded the case for trial to allow resolution of these disputed factual issues.

{¶ 23} On remand, the court held a bench trial. As previously stated, Cheick failed to appear for the trial despite receiving multiple notices that his failure to appear could result in judgment being rendered against him in his absence. Counsel for Best Motors explained that Cheick approached Atta about selling the vehicle, and Atta went to Cheick's house to inspect it. Atta negotiated with Cheick, and they reached an agreement on the sale price. Cheick advised Atta that the title was in New York, but he would hold it for Best Motors if it made a down payment of $2,000. Best Motors represented to the court that the signature on the receipt for the down payment is Cheick's signature. (Tr. 5, and 13-14.) Cheick was not present at trial to refute that claim.

{¶ 24} Best Motors's lawyer further represented that when Bangaly arrived from New York with the certificate of title, both Bangaly and Cheick insisted that Atta pay for the vehicle in cash. (Tr. 5, 13, and 14.) The title indicated that the vehicle was owned by Brandon A. Trapp, but Bangaly told Atta that he buys and sells cars in New York and New Jersey where they have open car titles. With an open title, a car owner can sign the back of the title and then sell the car on the open market. (Tr. 6.) Atta was familiar with open titles and did not think there was anything suspicious about it. (Tr. 6.) He, therefore, gave Bangaly a cashier's check for the remaining $44,000 due on the agreed contract price. By the time Atta discovered that the car was stolen, it was too late to stop payment on the cashier's check. (Tr. 8.) Atta verified under oath that all of these facts and evidence presented were true and accurate. (Tr. 13-14.)

{¶ 25} Our decision in *Best Motors I* was based on summary judgment and the trial court's verdict was rendered at trial. Summary judgments and trial verdicts are subject to different standards. Under Civ.R. 56(C), summary judgment is only appropriate if there are no genuine issues of material fact. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679 (1995), paragraph three of the syllabus. When summary judgment is not appropriate, the case proceeds to trial where the trier of fact is responsible for resolving factual disputes by weighing the credibility of the witnesses and other evidence. *Caldas v. Caldas*, 2005-Ohio-4493, ¶ 51 (2d Dist.). The trier of fact is able to view the witnesses and observe their demeanor, gestures, and voice inflections and use these observations in weighing the credibility of the

proffered testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 26} Ordinarily, the trier of fact adjudicates factual disputes by listening to the evidence presented by all parties and resolving conflicts based on credibility determinations. A witness's credibility may be challenged at trial through cross-examination or by the presentation of conflicting evidence. Cheick forfeited the opportunity to present evidence to contradict the evidence presented by Best Motors because he failed to appear for trial. He also surrendered the opportunity to cross-examine Atta. As a result, the trial court based its decision on Best Motors' unopposed presentation of evidence. Although the evidence presented at trial was almost the same as that submitted in support of summary judgment, the trial court's verdict is based on trial evidence and is, therefore, not inconsistent with our decision in *Best Motors I.*

{¶ 27} The first assignment of error is overruled.

## B. Motion to Dismiss

{¶ 28} In the second assignment of error, Cheick argues the trial court committed reversible error by denying his motion to dismiss the complaint. He contends the complaint fails to state a claim on which relief can be granted and that the court failed to comply with Civ.R. 12(B)(6).

{¶ 29} A trial court's review of a Civ.R. 12(B)(6) motion to dismiss is limited to the four corners of the complaint along with any documents properly attached to, or incorporated within, the complaint. *Glazer v. Chase Home Fin. L.L.C.*, 2013-

Ohio-5589, ¶ 38 (8th Dist.).  In our review of a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff.  *Jenkins v. Cleveland*, 2017-Ohio-1054, ¶ 8 (8th Dist.), citing *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 6.  For a party to prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a trial court granting relief.  *Id.*, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975).

{¶ 30} We review a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss de novo.  *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5.  In a de novo review, we review the merits of the case independently, without any deference to the trial court.  *Sosic v. Stephen Hovancsek & Assocs., Inc.*, 2021-Ohio-2592, ¶ 21 (8th Dist.).

### 1. Breach of Contract

{¶ 31} Regarding Best Motors' breach-of-contract claim, Cheick argues Best Motors "failed to show the existence of a contract between Best Motors and Defendant Cheick Kaba." (Appellant's brief p. 7.)  He contends the exhibits attached to the complaint prove that Best Motors entered into a contract with Bangaly only and that there is nothing to show that Best Motors entered into a contract with Cheick.

{¶ 32} To establish the existence of a valid contract, the proponent of the contract must demonstrate that an offer was made, the offer was accepted, and that there was consideration for the mutual exchange of promises.  *Kostelnik v. Helper*,

2002-Ohio-2985, ¶ 16. To properly state a claim for breach of contract, the plaintiff must allege (1) the existence of a binding contract, (2) the nonbreaching party performed his or her contractual obligations, (3) the other party failed to fulfill its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages as a result of the breach. *Cynergies Consulting, Inc. v. Wheeler*, 2008-Ohio-3362, ¶ 15 (8th Dist.), citing *All Star Land Title Agency, Inc. v. Surewin Invest., Inc.*, 2006-Ohio-5729 (8th Dist.).

{¶ 33} The complaint alleges that Cheick offered to sell the 2019 Toyota Land Cuiser and that Cheick and Atta agreed on the purchase price of $46,000. (Complaint ¶ 8-9.) Thus, the complaint alleges that Cheick made an offer, Atta, on behalf of Best Motors, accepted the offer and agreed to pay $46,000 in exchange for the vehicle. The complaint further alleges that Best Motors paid a $2,000 cash deposit and later paid the remaining $44,000 owed on the contract in the form of a cashier's check, but Cheick and Bangaly failed to deliver the vehicle free and clear. Although the bill of sale and the cashier's check attached to the complaint contain Bangaly's name and not Cheick's name, the complaint alleges that Cheick offered to sell the car, negotiated the sale price, and accepted the $2,000 cash down payment pursuant to the agreement. Therefore, the trial court properly denied Cheick's motion to dismiss the breach-of-contract claim.

### 2. Unjust Enrichment

{¶ 34} Cheick argues the trial court should have dismissed the unjust-enrichment claim "due to lack of evidence." (Appellant's brief at. 8.) However, as

previously stated, a trial court's review of a Civ.R. 12(B)(6) motion to dismiss is limited to the four corners of the complaint along with any documents properly attached to, or incorporated within, the complaint. *Glazer*, 2013-Ohio-5589, at ¶ 38. The court must also accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Jenkins*, 2017-Ohio-1054, at ¶ 8 (8th Dist.), citing *Johnson*, 2005-Ohio-4985, at ¶ 6. Therefore, in reviewing a motion to dismiss, the court is focused solely on the allegations of the complaint, and it is not concerned with the evidence.

{¶ 35} Unjust enrichment occurs where "a person 'has and retains money or benefits which in justice and equity belong to another.'" *Johnson*, 2005-Ohio-4985, at ¶ 20, quoting *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938). To properly state a claim for unjust enrichment, the plaintiff must allege that (1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit and (3) the defendant retained the benefit under circumstances that were unjust. *Johnson* at ¶ 20, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984); *Figgie v. Figgie*, 2021-Ohio-1195, ¶ 55 (8th Dist.). The purpose of an unjust-enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to compensate the plaintiff for the benefit he or she conferred on the defendant. *Johnson* at ¶ 21; *Figgie* at ¶ 54. An unjust-enrichment claim is an alternative theory of liability to a breach-of-contract claim. *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190 (8th Dist.).

{¶ 36} The complaint alleges Best Motors gave Cheick and Bangaly a total of $46,000 in exchange for a car that turned out to be stolen and was later seized by the police. (Complaint ¶ 11, 15, and 21-22.) Although the cashier's check and the bill of sale do not contain Cheick's name, the complaint alleges that Cheick negotiated the exchange of money for the car and that he personally received at least $2,000 in cash. The complaint alleges he was enriched as result of the exchange, and the trial court properly overruled Cheick's motion to dismiss the unjust-enrichment claim.

### 3. Fraud

{¶ 37} Cheick argues the trial court erred in failing to dismiss Best Motors' fraud claim. He contends Best Motors "completely failed to meet its burden of proof that Cheick defrauded [Best Motors]" since his "name is not shown on any of the documents listed as exhibits" attached to Best Motors' complaint and motion for summary judgment. (Appellant's brief p. 8.) However, as previously stated, the court is not concerned with the burden of proof when reviewing a motion to dismiss under Civ.R. 12(B)(6). The court's review is limited to the allegations contained within four corners of the complaint and any documents properly attached to, or incorporated within, the complaint. *Glazer*, 2013-Ohio-5589, ¶ 38 (8th Dist.).

{¶ 38} To state a claim for fraud, the plaintiff must allege (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5)

justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987); *Mobley v. James*, 2020-Ohio-380, ¶ 32 (8th Dist.).

{¶ 39} Although the bill of sale and the cashier's check do not contain Cheick's name, the complaint alleges that Cheick made material misrepresentations to Best Motors that induced Best Motors to pay $46,000 in cash in exchange for a car that Cheick and Bangaly knew was stolen. According to the complaint, Cheick was the one who first contacted Best Motors about selling the car, negotiated the sale price, and requested a $2,000 down payment. In other words, the complaint alleged that Cheick was directly involved in the fraudulent transaction even though his name was not on the cashier's check or the bill of sale. Therefore, the trial court properly denied Cheick's motion to dismiss the fraud claim.

### 4. Civil Theft and Conversion

{¶ 40} Cheick next argues the trial court erred in failing to dismiss Best Motors' civil theft and conversion claims.

{¶ 41} In Ohio, "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action[.]" R.C. 2307.60(A)(1). Therefore, a plaintiff may "recover damages from any person who willfully . . . commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property." R.C. 2307.61(A). R.C. 2913.01 lists violations of R.C. 2913.02 and 2913.04 as theft offenses.

{¶ 42} R.C. 2913.02(A) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [w]ithout the consent of the owner or person authorized to give consent[.]"  Similarly, "[c]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner or the withholding of the property from the owner's possession under a claim inconsistent with the owner's rights." *Bunta v. Superior VacuPress, L.L.C.*, 2022-Ohio-4363, ¶ 20; *Poston ex rel. Poston v. Shelby-Love*, 2017-Ohio-6980, ¶ 18 (8th Dist.).

{¶ 43} As previously stated, the complaint alleged that Cheick and Bangaly fraudulently induced Best Motors to give them $46,000 in exchange for a car they knew was stolen vehicle.  Cheick and Bangaly withheld Best Motors' money and refused to return it even though they obtained it through fraud and were not entitled it.  Therefore, the trial court properly overruled Cheick's motion to dismiss the civil theft and conversion claims.

### 5. Civil Conspiracy

{¶ 44} Civil conspiracy is "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987).  To properly state a claim for civil conspiracy, the plaintiff must allege (1) a malicious combination of two or more persons, (2) resulting injury to

another's person or property, and (3) the existence of an unlawful act independent from the conspiracy itself. *Woods v. Sharkin*, 2022-Ohio-1949, ¶ 103 (8th Dist.).

{¶ 45} The complaint alleges that Cheick made misrepresentations about a vehicle he wished to sell to Best Motors. Although Cheick made the initial contact with Best Motors, the complaint alleges that Cheick worked with Bangaly, who represented himself to Best Motors as a car dealer. The complaint alleges that both Cheick and Bangaly sold the vehicle to Best Motors and that Bangaly represented that he was the "the lawful owner" of the vehicle. (Complaint ¶ 12 and 14.) Best Motors was injured by the fraud perpetrated by Cheick and Bangaly because it paid them $46,000 and received nothing of value in return. Therefore, the trial court properly overruled Cheick's motion to dismiss the civil conspiracy claim.

{¶ 46} The trial properly denied Cheick's motion to dismiss the complaint. Therefore, the second assignment of error is overruled.

## C. Trial in Absentia

{¶ 47} In the third assignment of error, Cheick argues the trial court erred in proceeding with the trial in his absence. He asserts that he was not properly served with notice of the trial and that the court erred in granting a default judgment under Civ.R. 55.

{¶ 48} "[O]nce a defendant has timely answered the complaint and contested the allegations therein, no default judgment can be entered against him." *Fendrich v. Fendrich*, 1989 Ohio App. LEXIS 820 (8th Dist. Mar. 9, 1989), citing *Reese v. Proppe*, 3 Ohio App.3d 103, 105 (8th Dist. 1981). Civ.R. 55, which governs default

judgments, "only applies where a defendant has 'failed to plead or otherwise defend'" against the action. *Id.*, quoting Civ.R. 55. Cheick appeared at times and took action to defend against the case. Therefore, Civ.R. 55 is inapplicable.

{¶ 49} Nevertheless, this court has held that where a party has entered an appearance but fails to appear for trial, the court may proceed with the trial ex parte in the opponent's absence. *Id.* at *5. "[A]ny judgment based upon an ex parte trial is a judgment after trial pursuant to Civ.R. 58, and not a default judgment under Civ.R. 55." *Id.*

{¶ 50} A trial court may proceed to an ex parte trial provided the parties receive adequate notice. *Whitesed v. Huddleston*, 2021-Ohio-2400, ¶ 1 (8th Dist.) ("The trial court did not violate [plaintiff]'s due process rights when it proceeded ex parte with the trial because it provided notice of the trial date to [plaintiff] when it recorded it on the docket and notices were sent to her attorney, who informed [plaintiff] of the hearing date.").

{¶ 51} Cheick provided the court with a mailing address for court notices and included the address on all of his filings. Cheick also indicated that he preferred to receive court notices by U.S. mail rather than by email. During the pendency of the case, he nevertheless complained to the trial court that he was not receiving the court's notices. In response, the trial court issued several journal entries instructing Cheick that delayed receipt of mailed notices is the fault of the United States Postal Service and not the fault of the clerk of courts. The court also advised Cheick that he could register to receive court notices by email and that he should monitor the

court's online docket for notices. Moreover, the court warned Cheick multiple times that his failure to appear for trial could result in judgment being rendered against him in his absence.

{¶ 52} Notice is deemed to have been provided once the clerk has served notice of the entry and made the appropriate notation on the docket. *Grabowski v. Allstate Ins. Co.*, 2007-Ohio-2765, ¶ 22 (8th Dist.). "Hence, it is not the receipt of the notice that is controlling but whether a party would have been able to discover the court's order in the course of that party's duty to check the docket." *Id.*, citing *Coleman v. Cleveland School Dist. Bd. of Edn.*, 2003-Ohio-880, ¶ 11 (8th Dist.).

{¶ 53} There is no question that Cheick was on notice that his failure to properly monitor the court's online docket and his failure to appear for trial would result in judgment against him in his absence. The court's journal entry dated August 30, 2023, directs Cheick to "familiarize himself with the court's August 21, 2023 journal entry regarding the 09/25/23 trial in this matter." The August 21, 2023 journal entry further warns that "failure to appear at any future date will result in sanctions" and that "[f]ailure of any kind of any party to appear in person will result in sanctions including . . . judgment being rendered." The court's journal entries dated June 5, 2023, June 13, 2023, and June 27, 2023, contain similar language warning that failure to appear for trial will result in judgment being rendered in Cheick's absence. Therefore, despite Cheick's claims to the contrary, he was on notice of the trial date, the requirements for trial, and that his failure to appear would result in judgment being rendered against him.

{¶ 54} Therefore, the third assignment of error is overruled.

### D. Counterclaim

{¶ 55} In the fourth assignment of error, Cheick argues the trial court committed prejudicial error by denying his unopposed motion for leave to file a counterclaim against Best Motors and Atta.

{¶ 56} Whether to grant a party leave to file a counterclaim is solely within the discretion of the trial court, and the trial court's judgment will not be disturbed absent an abuse of discretion. *Restaurant Developers Corp. v. Peterson Group, Inc.*, 2005-Ohio-5448, ¶ 16 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. This court has also held that an abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶ 57} Civ.R. 13(A) requires a compulsory counterclaim to be filed with the answer. *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, ¶ 62 (9th Dist.), citing *Mulhollen v. Angel*, 2005-Ohio-578, ¶ 27 (10th Dist.). A claim must be brought as a compulsory counterclaim under Civ.R. 13(A) where the claim (1) "'exist[s] at the time of serving the pleading'" and (2) "'arise[s] out of the transaction or occurrence that is the subject matter of the opposing claim.'" *Rettig Ents. v. Koehler*, 68 Ohio St.3d 274, 277 (1994), quoting *Geauga Truck & Implement Co. v. Juskiewicz*, 9 Ohio St.3d 12, 14 (1984).

{¶ 58} However, Civ.R. 13(F) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." An amendment under Civ.R. 13(F) is governed by Civ.R. 15(A), which favors leave to amend unless there is "'a finding of bad faith, undue delay or undue prejudice to the opposing party.'" *Josselson v. Josselson*, 52 Ohio App.3d 60, 61 (8th Dist. 1988), quoting *Hoover v. Sumlin*, 12 Ohio St.3d 1, 6 (1984).

{¶ 59} Cheick filed a motion for leave to file a counterclaim on October 23, 2023, nearly a month after the court conducted the trial on Best Motors' complaint and more than three years after the complaint was filed. He did not explain the reason for his delay in requesting leave to file the counterclaim nor did he explain the allegations he intended to present in the counterclaim. He did not attach a proposed pleading to the motion for leave to plead. Therefore, Cheick failed to present a compelling reason as to why the court should allow him to file a counterclaim at such a late date in the proceedings, and the court acted within its discretion in denying Cheick's untimely request for leave to file a counterclaim.

{¶ 60} The fourth assignment of error is overruled.

### E. Relief From Judgment

{¶ 61} In the fifth assignment of error, Cheick argues the trial court erred in denying his Civ.R. 60(B) motion for relief from judgment. He contends the court should have issued findings of fact and conclusions of law in support of its denial of his motion.

{¶ 62} However, findings of fact and conclusions of law are not required for Civ.R. 60(B) motions. *Stafford & Stafford Co., L.P.A. v. Steele*, 2013-Ohio-4042, ¶ 23 (8th Dist.), citing *Clemens v. Detail at Retail, Inc.*, 2006-Ohio-695, ¶ 17 (8th Dist.). Therefore, the lack of findings of fact and conclusions of law is not a basis for reversal.

{¶ 63} Furthermore, "'a motion for relief from judgment cannot be predicated upon the argument that the trial court made a mistake in rendering its decision.'" *Hawken School v. Norstrom*, 2018-Ohio-2302, ¶ 34 (8th Dist.), quoting *Chester Twp. v. Fraternal Order of Police*, 102 Ohio App.3d 404, 408 (11th Dist. 1995); *Anderson v. Garrick*, 1995 Ohio App. LEXIS 4501, 13 (8th Dist. Oct. 12, 1995). (Civ.R. 60(B) may not be used to attack legal errors made by the trial court.)

{¶ 64} Civ.R. 60(B) "permits a court to grant relief when the factual circumstances relating to a judgment are shown to be materially different from the circumstances at the time of the judgment." *Id.* If a party wishes to challenge a trial court's judgment, it may do so by filing an appeal. *Id.*

{¶ 65} In his motion for relief from judgment, Cheick argued that he had no notice of the scheduled trial because he had not been served with notices, that the trial court improperly granted a default judgment against him, that the court denied his request for leave to file a counterclaim, that Atta lied in the affidavit submitted in support of summary judgment, and that the trial court judge was biased. All of these issues were litigated in the trial court, and Cheick was unhappy with the outcomes. Cheick's remedy for these alleged errors is to file an appeal, not to ask

the court to reconsider its prior decisions pursuant to Civ.R. 60(B). Furthermore, the truthfulness of Atta's affidavit is a moot issue since it was submitted in support of Best Motors' motion for summary judgment that was reversed on appeal. And, the Ohio Supreme Court held that Cheick failed to comply with the requirements of R.C. 2701.03(B)(3) when he filed the motion for disqualification of the trial judgment in the Ohio Supreme Court. Therefore, none of the issues presented in the motion for relief from judgment were appropriate for a motion filed under Civ.R. 60(B) and the trial court properly overruled it.

{¶ 66} The fifth assignment of error is overruled.

**F.  Judicial Bias**

{¶ 67} In the sixth assignment of error, Cheick argues the trial court's judgment should be reversed because the trial judge was biased against him.

{¶ 68} "We do not have jurisdiction 'to vacate a trial court's judgment based on a claim of judicial bias.'"  *Karr v. Salido*, 2024-Ohio-1141, ¶ 49 (10th Dist.), quoting *Cooke v. United Dairy Farmers, Inc.*, 2006-Ohio-4365, ¶ 45 (10th Dist.); *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442 (1978); *State v. Frazier*, 2017-Ohio-8307, ¶ 16 (8th Dist.), quoting *State v. Williamson*, 2016-Ohio-7053, ¶ 27 (8th Dist.) ("A court of appeals has 'no authority to determine a claim that a trial judge is biased or prejudiced against a defendant and no authority to void a trial court's judgment based on a claim that the trial judge is biased or prejudiced.'").

{¶ 69} Nevertheless, an appellate court may reverse a judgment "if the bias or prejudice violated the defendant's right to due process and deprived the

defendant of a fair hearing." *Cleveland v. Goodman*, 2020-Ohio-2713, ¶ 16 (8th Dist.). But "[t]he law presumes that a judge is unbiased and unprejudiced in the matters over which he or she presides, and the appearance of bias or prejudice must be compelling in order to overcome the presumption." *State v. Filious*, 2016-Ohio-8312, ¶ 14 (8th Dist.), citing *State v. Power*, 2013-Ohio-4254, ¶ 23 (7th Dist.), citing *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 1262 (1994).

{¶ 70} We find nothing in the record to suggest that the trial court was biased or prejudiced against Cheick. The trial court warned Cheick numerous times that his failure to appear for trial would result in judgment being rendered against him. The court's journal entries provided guidance as to how Cheick could receive email notifications from the court and as to how he could monitor the court's online docket. Despite the trial court's efforts to assist Cheick and despite the court's numerous warnings, he failed to appear for trial. As a result, the court had nothing but Best Motors' evidence and argument on which to render its decision. The court proceeded with an ex parte trial not because it was biased against Cheick but because Cheick disregarded all the court's notices, warnings, and guidance. We, therefore, find nothing to suggest that the trial court deprived Cheick of a fair trial or that it violated his right to due process.

{¶ 71} The sixth assignment of error is overruled.

## G. Best Motors' Negligence

{¶ 72} In the seventh assignment of error, Cheick argues the trial court's judgment should be reversed because Best Motors' loss was the result of its own

negligence and greed. He contends that, as a used car dealer, Best Motors knew or should have known how to avoid buying a stolen car. "[A] party cannot raise new arguments and legal issues for the first time on appeal[.]" *Miller v. Cardinal Care Mgt.*, 2019-Ohio-2826, ¶ 23 (8th Dist.). The failure to raise an issue before the trial court waives that issue for appellate purposes. *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017 Ohio-384, ¶ 28 (8th Dist.).

{¶ 73} Cheick did not present this argument at trial. He, therefore, waived this argument for appeal. And, although Best Motors was naïve to pay cash for a car with an open title, its naivety does not excuse the sellers' wrongdoing.

{¶ 74} The seventh assignment of error is overruled.

## H. Damages

{¶ 75} In the eighth assignment of error, Cheick argues the trial court's award of compensatory and punitive damages and attorney fees should be reversed because they are the "product of a lack of good faith and clearly erroneous under Ohio law." (Appellant's brief p. 26.)

{¶ 76} We review a trial court's finding of fact under a manifest-weight standard of review. *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 2011-Ohio-1922, ¶ 5 (8th Dist.), citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77 (1984). In a manifest-weight review, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and

created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial order." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 77} We review the trial court's conclusions of law de novo. *Long Beach Assn. v. Jones*, 82 Ohio St.3d 574, 576 (1998). In a de novo review, we afford no deference to the trial court's decision and independently review the record to determine whether the grant of summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

## 1. Compensatory Damages

{¶ 78} The trial court's award of compensatory damages in the amount of $46,000 is supported by the evidence. The evidence presented at trial showed that Best Motors paid $46,000 for a vehicle that turned out to be stolen. The car was seized by police, and Best Motors was left with nothing in exchange for its $46,000. Therefore, the award of $46,000 in compensatory damages was reasonable and supported by the manifest weight of the evidence.

## 2. Punitive Damages

{¶ 79} R.C. 2315.21 governs the recovery of punitive and exemplary damages in tort actions. For a plaintiff to recover punitive damages in a tort action, the plaintiff must first be awarded compensatory damages and then show, by clear and convincing evidence, that

> [t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.

R.C. 2315.21(C) and (D)(4).

{¶ 80} The term "actual malice" for purposes of a punitive-damages award has been defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Fowerbaugh v. Sliman*, 2022-Ohio-1314, ¶ 63 (8th Dist.), citing *Sivit v. Village Green of Beachwood, L.P.*, 2015-Ohio-1193, ¶ 7; *Preston v. Murty*, 32 Ohio St.3d 334 (1987), syllabus; *Leeds v. Weltman, Weinberg & Reis Co., L.P.A.*, 2021-Ohio-4123, ¶ 60 (8th Dist.).

{¶ 81} R.C. 2315.21(D)(2) imposes a cap on punitive damages and states, in relevant part:

> (a) The court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of the compensatory damages awarded to the plaintiff from that defendant, as determined pursuant to division (B)(2) or (3) of this section.

> (b) If the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten per cent of the employer's or individual's net worth when the tort was committed up to a maximum of three hundred fifty thousand dollars, as determined pursuant to division (B)(2) or (3) of this section.

{¶ 82} The decision to award punitive damages is within the trial court's discretion and, absent an abuse of discretion, the court's ruling will be upheld. *Hawes v. Downing Health Technologies L.L.C.*, 2022-Ohio-1677, ¶ 79 (8th Dist.), citing *Kemp v. Kemp*, 2005-Ohio-3120, ¶ 73 (5th Dist.).

{¶ 83} As previously stated, the trial court awarded Best Motors $46,000 in compensatory damages and $92,000 in punitive damages. The punitive-damages award of $92,000 is equal to two times the amount of compensatory damages and is, therefore, consistent with the law.

{¶ 84} Courts have awarded punitive damages against individuals who made fraudulent misrepresentations about cars they sold to the plaintiffs. *See*, *e.g.*, *Pearn v. Daimler Chrysler Corp.*, 2002-Ohio-3197 (9th Dist.); *Anousheh v. Planet Ford, Inc.*, 2007-Ohio-4543 (2d Dist.). In *Pearn*, a jury awarded $75,000 in punitive damages against a car dealership and $150,000 in punitive damages against the car's manufacturer. The punitive damages were awarded after the jury found that the defendants fraudulently misrepresented that the car sold to the plaintiff was a demo and that she would be the first owner when in fact the manufacturer had bought the car back from a prior owner because it was a "lemon." *Id*. at ¶ 2 and 23.

{¶ 85} In *Anousheh*, a jury awarded $200,000 in punitive damages against a used car dealership and $30,000 in punitive damages against the general manager of the dealership. The dealership and the general manager fraudulently misrepresented that a car they sold to the plaintiffs had only been in one accident when in fact it had been in three accidents, and the car needed repairs for the previously undisclosed damage it sustained in the prior accidents. The punitive-damages claims in both cases were affirmed. *Anousheh* at ¶ 48; *Pearn* at ¶ 24.

{¶ 86} "The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio

St.3d 638, 651 (1994). We have found that the trial court's award of compensatory damages in the amount of $42,000 is supported by the manifest weight of the evidence. Having first determined that the award of compensatory damages was justified, the court could then award punitive damages for fraud. In this case, the trial court awarded twice the amount of compensatory damages or $92,000 as punitive damages. Because the punitive damages award is equal to twice the amount of compensatory damages, it complies with the cap on punitive damages provided in R.C. 2315.21(D). The amount of punitive damages is also comparable to the punitive-damages awards in *Anousheh* and *Pearn*. Therefore, we cannot say that the award of punitive damages was an abuse of discretion.

### 3. Attorney Fees

{¶ 87} The trial court awarded Best Motors attorney fees in the amount of $22,620. We review a trial court's decision regarding an award of attorney fees for an abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991).

{¶ 88} Under the "American rule," a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation. *Cruz v. English Nanny & Governess School*, 2022-Ohio-3586, ¶ 35. However, when punitive damages are awarded, attorney fees may also be awarded as a component of compensatory damages. *Zappitelli v. Miller*, 2007-Ohio-3251, ¶ 6, citing *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 558 (1994) ("Attorney fees may be awarded as an element of

compensatory damages where the jury finds that punitive damages are warranted.").

{¶ 89} "When ruling on a request for attorney fees, a trial court must determine the 'lodestar,' which is the attorney's reasonable hourly rate multiplied by the number of hours reasonably worked on the litigation." *Scott v. First Choice Auto Clinic, Inc.*, 2023-Ohio-3855, ¶ 45 (10th Dist.), citing *Bittner* at 145. "There is a strong presumption that the lodestar amount is the proper amount for an attorney-fee award." *Id.*, citing *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 19. The party seeking an award of attorney fees bears the burden of demonstrating the reasonableness of the requested fees. *Bales v. Forest River, Inc.*, 2019-Ohio-4160, ¶ 19 (8th Dist.), citing *Nordquist v. Schwartz*, 2012-Ohio-4571, ¶ 22 (7th Dist.).

{¶ 90} In calculating attorney fees, courts consider numerous factors in addition to the lodestar amount. These factors include the time and labor involved in litigation, the novelty and difficulty of the legal questions involved, and the results of the legal services. *Benton Village Condominium Owners' Assn. v. Holdings, JRG Ltd.*, 2008-Ohio-148, ¶ 39 (8th Dist.), citing *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 2008-Ohio-148, ¶ 46 (10th Dist.).

{¶ 91} In support of its claim for attorney fees, Best Motors submitted attorney-fee bills from three law firms, all of which represented Best Motors at various times during the pendency of the litigation. Cavitch, Familo & Durkin Co., L.P.A. billed $2,852.40 for a total of 9.4 hours. The bill charged three hours at a rate

of $200 per hour, 5.9 hours at a rate of $300 per hour and a half hour at $375 per hour. Fisher & Phillips L.L.P. billed $23,952 for 59.5 hours. Its bills consisted of 24.6 hours at a rate of $395 per hour and 34.9 hours at a rate of $400 per hour. And Ogletree Deakins billed $4,012.50 for seven and a half hours at a rate of $535. The bills were filed with the court for review.

{¶ 92} The trial court found that given the nature of the proceedings, the total of 76.4 hours expended in prosecuting the action was reasonable. The court also found that the rate of $200 per hour was reasonable. However, it concluded that rates over $300 that were charged on the remaining 73.4 hours were not reasonable, and the court set a reasonable hourly rate of $300 per hour. We find nothing unreasonable about the number of hours expended or the hourly rate as modified by the court. We, therefore, find no abuse of discretion in the award of attorney fees.

{¶ 93} The eighth assignment of error is overruled.

## I. Judgment Lien

{¶ 94} In the ninth assignment of error, Cheick argues the trial court erred in denying his motion to quash or terminate the certificate of judgment entered against him. He contends the trial court erred by failing to issue findings of fact and conclusions of law and by failing to issue a stay.

{¶ 95} Civ.R. 52 governs findings by the court and states, in relevant part:

> When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, *or not later than seven days after the party filing the request has been given notice of the court's announcement of its*

*decision*, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

(Emphasis added.)

{¶ 96} The trial court conducted the trial on September 25, 2023, and issued a general verdict on November 9, 2023. Cheick did not file his motion for findings of fact and conclusions of law until March 3, 2024. Therefore, his request for findings of fact and conclusions of law was untimely and there was no basis for quashing the final judgment.

{¶ 97} Cheick's motion for a stay asked the court to stay the proceedings to enforce judgment while his motion for relief from judgment was pending. He did not ask for stay pending appeal. The trial court promptly denied the motion for relief from judgment and thereby rendered Cheick's requested stay moot.

{¶ 98} The ninth assignment of error is overruled.

{¶ 99} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)